# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# PANAMA CITY DIVISION

JOHN HENDERSON,

      Petitioner,

v.                                        CASE NO.  5:09cv316-RH/GRJ

WALTER A. McNEIL,

      Respondent.

_____/

## ORDER DENYING THE PETITION AND
## DENYING A CERTIFICATE OF APPEALABILITY

      A state-court jury convicted the petitioner John Henderson of second-degree murder and grand theft.  The court sentenced Mr. Henderson to life in prison.  Mr. Henderson now challenges the conviction and sentence by a petition for a writ of habeas corpus under 28 U.S.C. § 2254.

      It is undisputed that Mr. Henderson took the victim to a secluded area on a pretext and intentionally killed the victim by shooting him in the back of the head.  Mr. Henderson took some of the victim's property.  Mr. Henderson's assertion at trial, and his assertion now, is that he killed the victim in self defense, based on the belief that the victim would later kill or harm Mr. Henderson or his fiancé, if left

alive to do so. Mr. Henderson says his addiction to and use of crack cocaine contributed to the belief.

Mr. Henderson asserts that the trial court erred—and indeed violated the United States Constitution—by admitting evidence of Mr. Henderson's post*Miranda* confession, excluding evidence of the victim's violent character, excluding expert testimony on the effect of cocaine addiction, and sustaining objections to isolated defense questions. Mr. Henderson alleges the court's upward departure from the state sentencing guidelines violated the principle derived from *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and was unconstitutional on other grounds as well. Finally, Mr. Henderson asserts his attorney rendered ineffective assistance during the jury-selection process and by failing to give timely notice of the proposed expert testimony on the effect of using crack cocaine. None of the claims is well founded.

## I. The Standard of Review

Mr. Henderson killed the victim Lawrence Pinkard on April 21, 1996, three days before the Antiterrorism and Effective Death Penalty Act took effect. But the Act nonetheless applies to this petition because it was filed after the Act's effective date. *See*, *e.g.*, *(Michael) Williams v. Taylor*, 529 U.S. 420, 429 (2000) ("Petitioner filed his federal habeas petition after AEDPA's effective date, so the statute applies to his case.") (citing *Lindh v. Murphy*, 521 U.S. 320, 326-27

(1997)). Indeed, the jury rendered its verdict convicting Mr. Henderson after the Act's effective date, and all the state court decisions on direct appeal and collateral review occurred after the Act's effective date.

Under the Act, a federal habeas court may set aside a state court's ruling on the merits of a petitioner's claim only if the ruling "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the ruling "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). A long line of cases addresses these standards. *See*, *e.g.*, *(Terry) Williams v. Taylor*, 529 U.S. 362, 396 (2000); *Morris v. Secretary, Dep't of Corr.*, No. 09-15471, 2012 WL 1370848 (11th Cir. Apr. 20, 2012). No purpose would be served by repeating here all the analysis set out in the many cases.

## II. The Issue at the Trial

Mr. Henderson admitted before he was indicted that he killed Mr. Pinkard after getting Mr. Pinkard to an isolated area on a pretext. Mr. Henderson testified at the trial and acknowledging that he did indeed kill Mr. Pinkard by shooting him in the back of the head. Mr. Henderson said he did it because Mr. Pinkard was a drug dealer who supplied Mr. Henderson and his fiancé Tracy Adams with crack cocaine even after they asked him to stop, Mr. Pinkard moved into Mr.

Henderson's home without permission and refused to move out, Mr. Pinkard made sexual advances to Ms. Adams, Mr. Pinkard threatened Mr. Henderson, Mr. Pinkard's cohorts intimidated Mr. Henderson, and Mr. Pinkard injured Mr. Henderson's wrist.  All of this happened in the weeks leading up to the killing; none of it happened at the time of the killing.  Mr. Henderson said he was afraid to report Mr. Pinkard to law enforcement and believed Mr. Pinkard would eventually injure Mr. Henderson and Ms. Adams.

The evidence was plainly sufficient to support the guilty verdict.  The evidence may or may not have been sufficient to support a self-defense instruction; one could argue both sides of that question.  But the trial court resolved this issue in Mr. Henderson's favor, giving a self-defense instruction that Mr. Henderson does not challenge.  The jury rejected the defense, as it was entitled to do.

### III. Exhaustion and Timeliness

Mr. Henderson unsuccessfully challenged his conviction and sentence on direct appeal and through successive state-court applications for collateral review, thus satisfying the requirement to exhaust state-court remedies, except on claims that were not asserted as federal claims in the state proceedings.  The federal petition is timely.  This order addresses the claims in the federal petition, though not in the same sequence as they are set out in the petition.

## IV. The Confession

When the investigating officer sought to interview Mr. Henderson, the officer gave the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 467-73 (1966). App. Ex. Q at 166.  Mr. Henderson said he understood his rights and that he wished to speak with the officer without an attorney. *Id.*  Mr. Henderson signed a form waiving his rights. *Id.*  Mr. Henderson proceeded to discuss his killing of Mr. Pinkard in clear, straightforward, and lucid terms.  His description of the events in the interview lined up very well with the testimony he gave at trial; indeed, Mr. Henderson testified at trial that the statement was "pretty much" how it happened.  App. Ex. R at 332.

Mr. Henderson now says he did not voluntarily waive his rights, but the evidence is to the contrary.  In any event, the officer complied with *Miranda* to the letter and did nothing to improperly coerce Mr. Henderson to make a statement. When an officer complies with *Miranda* and does nothing to improperly coerce a statement, the statement is admissible.  The Supreme Court squarely so held in *Colorado v. Connelly*, 479 U.S. 157 (1986).  The state courts' rejection of this claim thus was fully consistent with—and not contrary to or an unreasonable application of—federal law as determined by the Supreme Court.

## V. Evidence of the Victim's Reputation for Violence

Mr. Henderson asserts that the trial court erred—and indeed violated the United States Constitution—by excluding evidence of the victim Mr. Pinkard's violent character. The Florida Evidence Code ordinarily allows a defendant to introduce evidence of a victim's "pertinent trait of character." Fla. Stat. § 90.404(b)1. The defendant may prove the character trait by testimony about the victim's reputation. *Id.*, § 90.405(1).

This order assumes without deciding that evidence of Mr. Pinkard's reputation for violence would have been admissible under the Florida Evidence Code. Even so, Mr. Henderson's claim fails for three reasons.

First, Mr. Henderson asked witnesses whether Mr. Pinkard had a reputation *as a drug dealer*, and the court properly sustained objections. App. Ex. Q at 113. A victim's drug dealing is not a "pertinent trait of character"; a person cannot legally kill a drug dealer to keep him from dealing drugs. Mr. Henderson did not ask witnesses whether, or proffer testimony that, Mr. Pinkard had a reputation *for violence*. Mr. Henderson still has not proffered any such testimony.

Second, Mr. Henderson raised this claim in state court only as a claim under state law, not as a claim under the federal Constitution. Mr. Henderson thus procedurally defaulted the claim. A federal petitioner can overcome a procedural default by showing cause for and actual prejudice from the default or by showing

that enforcing the default would result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). But Mr. Henderson has made no such showing and could not do so on these facts.

Third, although both Florida and federal law allow testimony about a victim's reputation for violence, if pertinent, no federal constitutional right to introduce such testimony has been clearly established by the United States Supreme Court. Thus, even if (contrary to fact) Mr. Henderson had proffered testimony that Mr. Pinkard had a reputation for violence, and even if (contrary to fact) Mr. Henderson had exhausted in state court the claim that excluding such evidence was unconstitutional, Mr. Henderson still would not be entitled to relief in this court, under the AEDPA standard of review.

### VI. Experts on Addiction

Mr. Henderson proffered testimony of two experts on the effects of crack-cocaine addiction. They would have testified, in substance, that cocaine distorts a person's critical thinking. Mr. Henderson's theory was that his cocaine use contributed to his belief that Mr. Pinkard posed an imminent threat. The trial court excluded the evidence, noting that jurors understand that drugs affect critical thinking, and noting also that Florida law requires a defendant to disclose at least 30 days before trial any mental-health evidence on an issue other than insanity.

Mr. Henderson's habeas claim based on the exclusion of this expert testimony fails on at least two grounds.

First, Mr. Henderson raised this claim in state court only as a state-law claim, not as a federal constitutional claim. He has not met the *Coleman* standard for overcoming this procedural default.

Second, even if (as seems unlikely) excluding this evidence was error under state law, and even if (as seems even more unlikely) Mr. Henderson had a federal constitutional right to introduce this testimony, no such federal constitutional right had been (or has been even today) clearly established by the United States Supreme Court. Mr. Henderson plainly is not entitled to relief on this claim under the AEDPA standard of review.

## VII. Evidentiary Rulings

Mr. Henderson objects to isolated evidentiary rulings, but none comes close to a constitutional violation.

The state asked Debra Masters about a conversation in which she heard statements of Mr. Henderson and his fiancé Ms. Adams about their intent to kill Mr. Pinkard. The defense objected that the conversation was hearsay. The court overruled the objection to Mr. Henderson's statements—they were plainly admissible as statements of an adverse party—but sustained the objection to Ms. Adams's statements. On cross-examination, the defense asked Ms. Masters about

Ms. Adams's statements, but the court sustained an objection because the defense had successfully objected to the state's questions about these same statements. The ruling was reasonable and certainly not unconstitutional.

The defense offered testimony of two witnesses—Rasheta McQueen and Kathryn Richardson—that Ms. Adams said she pled guilty because the state thought she was the crime's mastermind. What Ms. Adams thought the state thought about this of course would not have been admissible to show who was actually the mastermind. The defense theory was that this testimony was admissible to show Ms. Adams's motive for testifying for the state. But Ms. Adams acknowledged that she entered the plea partly because the state thought she was the mastermind. And it was obvious that she had a motive to testify—to lessen her own punishment. The court properly excluded the cumulative testimony of Ms. McQueen and Ms. Richardson. The ruling was not unconstitutional.

Finally, the court sustained objections to inconsequential cross-examination of investigating officer Mark Dufresene on the ground that the questions were beyond the scope of the direct examination. The rulings were reasonable and plainly not unconstitutional.

Mr. Henderson is not entitled to relief based on these evidentiary rulings. The rulings were not unconstitutional. And the state courts' rejection of this claim

was not contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.

## VIII. Departure from the Guideline Range

Florida has sentencing guidelines.  The trial court departed upward from the guideline range, citing two grounds for doing so: the crime "involved a high degree of sophistication or planning," and the crime was committed "to prevent prosecution for the conduct underlying the arrest."  App. Ex. S at 1418.  Mr. Henderson asserts the Florida Supreme Court had struck down the statute authorizing departure on these grounds and that in any event neither ground properly applied here.

It is true that the Florida Supreme Court later held that the sentencing statute included in the 1995 Florida Statutes was adopted in violation of Florida Constitution's single-subject provision.  *Heggs v. State*, 759 So. 2d 620 (Fla. 2000).  The court struck down the improperly enacted statue and reinstated the prior sentencing statute, as included in the 1994 Florida Statutes.  The two grounds for departure at issue here were identical in both statutes.  The Florida Supreme Court's invalidation of the new statute thus makes no difference here.

As a matter of state law, one could argue either side of the issue whether departure on these grounds was proper.

First, the evidence was sufficient to support a finding that the crime involved a high degree of sophistication or planning, but the jury acquitted Mr. Henderson of first-degree murder, convicting him only of the lesser-included charge of second-degree murder.  Mr. Henderson asserts the trial court could not properly depart based on sophistication or planning because under Florida law, a court could not depart based on criminal conduct of which the defendant was not convicted. The trial court recognized this principle but concluded that a murder could—and this one did—involve a high degree of sophistication or planning without being premeditated as required for a first-degree murder conviction.  The ruling was upheld on appeal.

Second, the statute allowing a departure when the crime was committed "to prevent prosecution for the conduct underlying the arrest" could easily be read to apply only to a crime that was committed to prevent prosecution for other—"underlying"—conduct, not to apply to an effort to avoid prosecution for the very crime at issue. On this reading, if a fleeing bank robber shot a witness to prevent prosecution for the robbery, the statute would apply.  If, on the other hand, a person committed a murder for reasons having nothing to do with avoiding prosecution—as Mr. Henderson did—but took steps to avoid being caught, the statute would *not* apply.  Still, this was not the only plausible reading of the statute, and it was not the reading adopted by the Florida courts in this case.  The trial

court held the statute did apply based on Mr. Henderson's efforts to avoid detection for the murder itself, and the ruling was upheld on appeal. It is not at all clear that this was an incorrect reading of state law.

These state-law issues need not be addressed on the merits here because Mr. Henderson is not entitled to relief in this court either way. This is so for three reasons.

First, Mr. Henderson raised these issues in state court only under state law. He made a passing reference to constitutional rights, but this was insufficient to preserve a federal constitutional claim. Mr. Henderson has not met the *Coleman* standard for overcoming this procedural default.

Second, Mr. Henderson's failure to assert a federal claim in state court was understandable, because the state courts' rulings, even if erroneous, did not violate federal law. When, as in Florida at the time, a departure can be based on proof less than beyond a reasonable doubt, the federal Constitution does not prohibit an upward departure based on acquitted conduct. *See*, *e.g.*, *U.S. v. Watts*, 519 U.S. 148 (1997) (authorizing an increase in the offense level under the United States Sentencing Guidelines based on acquitted conduct). Nor does the Constitution prevent a state from departing upward based on a defendant's effort to cover up his crime.

Third, any federal constitutional right implicated by departing upward on these grounds was not clearly established by rulings of the United States Supreme Court.  Mr. Henderson is not entitled to relief under the AEDPA standard of review.

### IX. *Apprendi* and *Blakely*

Mr. Henderson also asserts the upward departure from the guideline range was unconstitutional because it was based on facts found only by the sentencing judge, not by the jury.  In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court held that a defendant has a right to a jury trial on any fact, other than a prior conviction, that increases the "statutory maximum" sentence.  In *Blakely v. Washington*, 542 U.S. 296 (2004), the Court held that the "statutory maximum," within the meaning of *Apprendi*, was the top of a state guideline range.  In *United States v. Booker*, 543 U.S. 220 (2005), the Court held the same was true for the federal guidelines.

The unconstitutionality of a state court's upward departure based on facts not found by a jury was first clearly established by *Blakely*.  By the time of that decision, Mr. Henderson's case was on collateral review.  In this circuit, it is settled that *Blakely*, like *Apprendi* and *Booker*, is not retroactively applicable to cases on collateral review.  *See Schriro v. Summerlin*, 542 U.S. 348 (2004) (holding the *Apprendi* jury-right principle not retroactively applicable on collateral

review); *In re Dean*, 375 F.3d 1287 (11th Cir. 2004) (holding *Blakely* not retroactively applicable to cases on collateral review); *United States v. Duncan*, 381 F.3d 1070 (11th Cir. 2004) (holding the defendant's failure to raise *Blakely* at trial or sentencing fatal to the defendant's attempt to raise the issue on direct appeal); *United States v. Curtis*, 380 F.3d 1308 (11th Cir. 2004) (holding that the defendant waived *Blakely* by not raising the issue in the initial brief on appeal, even though the issue was raised prior to the decision on the merits); *United States v. Levy*, 379 F.3d 1241 (11th Cir. 2004) (holding that the defendant waived *Blakely* by not raising the issue until a petition for rehearing on appeal); *McCoy v. United States*, 266 F.3d 1245, 1256-58 (11th Cir. 2001) (holding that *Apprendi* is not retroactively applicable to cases on collateral review).  *See also In re Anderson*, 396 F.3d 1336, 1340 (11th Cir. 2005) (holding that *Booker* is not grounds for a second or successive petition: "It follows that because *Booker,* like *Blakely* and *Ring,* is based on an extension of *Apprendi,* Anderson cannot show that the Supreme Court has made that decision retroactive to cases already *final* on direct review.").

Mr. Henderson is not entitled to relief on this claim.

## X. Ineffective Assistance

Finally, Mr. Henderson asserts that his trial attorney rendered ineffective assistance in two respects.  First, he says the attorney rendered ineffective

assistance during jury selection by failing to conduct an adequate voir dire on pretrial publicity and failing to peremptorily strike two jurors. Second, Mr. Henderson says the attorney rendered ineffective assistance by failing to file the required notice of intent to introduce the mental-health evidence—the testimony of the two experts on the effects of addiction.

### A. *Standard of Review*

The standard governing an ineffective-assistance claim is well established and was at the time of the state-court adjudication. *See Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner "must show that his lawyer's performance fell below an 'objective standard of reasonableness' and that the lawyer's deficient performance prejudiced the petitioner." *Van Poyck v. Fla. Dep't of Corrs.*, 290 F.3d 1318, 1322 (11th Cir. 2002) (quoting *Strickland*, 466 U.S. at 688); *see also Bell v. Cone*, 535 U.S. 685, 695 (2002) (noting the need for "proof of both deficient performance and prejudice to the defense"). A "strong presumption" exists "that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable and professional judgment." *Van Poyck*, 290 F.3d at 1322 (quoting *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc)). The deferential *Strickland* standard, coupled with the deferential AEDPA standard of review, establishes a double layer of deference. *See*, *e.g.*, *Rutherford v. Crosby*, 385 F.3d 1300, 1309 (11th Cir. 2004).

## B. Jury Selection

Mr. Henderson's claim based on his attorney's handling of jury selection fails both *Strickland* requirements. Mr. Henderson has shown neither deficient performance nor prejudice.

There is no standard in the profession that provides clear direction on which questions should be asked during voir dire and which potential jurors should be peremptorily struck. These are matters of strategy and judgment on which approaches vary widely even among the best attorneys. This record includes not the slightest hint that Mr. Henderson's very experienced attorney did anything other than exercise sound professional judgment on these matters.

Both sets of potential jurors were asked about pretrial publicity. App. Ex. T at 33; App. Ex. U at 16. All the jurors said they could decide the case based only on the evidence. *Id.* Mr. Henderson's attorney could have asked more questions on this subject, but if doing so would have had any effect at all, it probably would have hurt more than it helped. Emphasizing that this was a high-visibility case, in a community that is generally tough on crime, probably would not have helped. The attorney's failure to ask more questions about pretrial publicity was not ineffective.

Mr. Henderson also complains about his attorney's failure to peremptorily strike two specific jurors. The first worked in the circulation department of the

local newspaper, a fact that Mr. Henderson asserts made her an undesirable juror, but earlier in her life she had been stalked and felt threatened, a fact that an attorney could reasonably conclude made her a good juror for Mr. Henderson. The second juror was related to law enforcement officers and knew the prosecutor, but she also knew Mr. Henderson's attorney, who had represented the juror's son-in-law. And the second juror, like the first, had felt threatened earlier in her life, again suggesting that she would be a good defense juror. The attorney's decision not to strike these jurors was not ineffective.

Moreover, Mr. Henderson suffered no prejudice from his attorney's performance during jury selection. The court repeatedly instructed the jury to decide the case based only on the evidence. App. Ex. P at 6; App. Ex. V at 484. For all that appears in this record, that is precisely what the jury did. Indeed, the jury's decision to convict Mr. Henderson of only second-degree murder, in the face of evidence that would easily have supported a first-degree conviction, suggests that the attorney's performance during jury selection was quite good, and that Mr. Henderson was not prejudiced by anything the attorney did or did not do.

The state courts' rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.

Case 5:09-cv-00316-RH-GRJ   Document 23   Filed 09/28/12   Page 18 of 20

Page 18 of 20

### C. *Notice of Mental-Health Evidence*

Mr. Henderson also complains about his attorney's failure to give notice of mental-health evidence—expert testimony on the effect of cocaine addiction. For two reasons, Mr. Henderson is not entitled to relief on this claim.

First, the attorney's failure to give notice caused no prejudice. The trial court said the jurors would understand the relevant effects of cocaine addiction and that expert testimony on this subject was not needed. App. Ex. R at 376. The court also said Mr. Henderson failed to give the required notice, but this was only an alternative basis for excluding the evidence. Because the evidence would have been excluded anyway, Mr. Henderson suffered no prejudice.

Second, the state courts' rejection of this claim was not contrary to, or based on an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.

## XI. Certificate of Appealability

Rule 11 of the Rules Governing § 2254 Cases requires a district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." *See Miller-El v. Cockrell*, 537 U.S. 322, 335-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000); *Barefoot v. Estelle*, 463 U.S. 880,

893 n.4 (1983); *see also Williams v. Taylor*, 529 U.S. 362, 402-13 (2000) (setting out the standards applicable to a § 2254 petition on the merits). As the Court said in *Slack*:

> To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were " 'adequate to deserve encouragement to proceed further.' "

*Slack*, 529 U.S. at 483-84 (quoting *Barefoot*, 463 U.S. at 893 n.4). Further, in order to obtain a certificate of appealability when dismissal is based on procedural grounds, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* at 484.

The petitioner has not made the required showing. This order therefore denies a certificate of appealability. This is a definitive ruling on this issue that should allow Mr. Henderson to apply for a certificate in the United States Court of Appeals for the Eleventh Circuit without first moving for a certificate in this court. But if Mr. Henderson wishes, he may file a motion for a certificate in this court, and if he does so, the issue of whether a certificate should issue will be reconsidered *de novo*. The reason for allowing such a motion is to ensure that Mr.

Henderson has a full and fair opportunity to be heard on the certificate issue, despite Rule 11's requirement that the issue be addressed with this order.

## XII. Conclusion

Mr. Henderson admitted killing the victim.  He asserted self defense, but the assertion was weak.  Still, Mr. Henderson was convicted of only second-degree murder, not first.  He had a full and fair trial and is not entitled to relief on his various claims.  For these reasons,

IT IS ORDERED:

1. The clerk must enter judgment stating, "The petition is DENIED with prejudice."

2. A certificate of appealability is DENIED.

3. The clerk must close the file.

SO ORDERED on September 28, 2012.

s/Robert L. Hinkle  
United States District Judge
